UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/5/2017

-----------------------------------------------------------------X
                                    :

COURTNEY SIMON, et al.,                  :

                             :

                  Plaintiffs,      :             14-CV-8391 (JMF)

                             :

       -v-                     :      OPINION AND ORDER

                             :

CITY OF NEW YORK, et al.,          :

                             :

                Defendants.    :
-----------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this civil rights case, four men bring claims against the City of New York (the "City")

and several New York City Police Department ("NYPD") officers arising from their arrests on

April 10, 2014.  Specifically, Plaintiffs Courtney Simon, Keyshawn Francois, Vincent Phinizy,

and Marcus Creer bring false arrest and failure-to-intervene claims, among others, against the

City, Officer Edwin Espinal, Sergeant Ryan Gillis, Officer Eric Healy, and Lieutenant Jeremy

Scheublin.[1]  Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure,

for summary judgment on all of Plaintiffs' claims.[2]  Defendants also move to preclude Francois

from calling an expert and for spoliation sanctions against Simon.  For the reasons stated below,

---

[1]      When this case was originally filed, there was a fifth Plaintiff: Christian McKnight.
Thereafter, Plaintiffs moved to amend the Complaint to remove McKnight's claims (without
prejudice) (Docket No. 132), a motion that was granted by the Court with Defendants' consent.
(Docket No. 149).  Although McKnight's name still appears in the Second Amended Complaint
(Docket No. 155), the parties make no reference to his claims in their summary judgment
briefing and the Court treats the claims as dismissed.

[2]      Defendants filed their motion for summary judgment before Lieutenant Scheublin was
served with the complaint, but Scheublin nevertheless joins the motion.  (Docket No. 170
("Defs.' Reply Mem.") 9-10).

Defendants' motion for summary judgment is granted in part and denied in part, their motion to preclude Francois's expert is granted and their motion for sanctions is denied.

### BACKGROUND

The relevant facts, taken from materials submitted by the parties, are either undisputed or described in the light most favorable to Plaintiffs. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). Plaintiffs' claims arise out of an incident that occurred on April 10, 2014. Starting at approximately 9:20 p.m. on that night, the police received several 911 calls regarding shots fired in the vicinity of Odell Street and Starling Avenue in Parkchester, an area of the Bronx. (*See* Docket No. 161 ("Defs.' SOF") ¶¶ 1-4). One caller indicated that a group of "more than 60 male blacks" were moving toward Public School 106 on St. Raymonds Avenue, which is a block north of Odell Street and Starling Avenue. (*Id.* ¶ 2). Another caller stated that he had heard seven shots and that the group seemed to be performing a "ritual" because they were clapping and cheering as the shots were fired. (*Id.* ¶ 3).

A few minutes later, Officer Espinal and Sergeant Gillis — responding to the 911 calls and reports by uniformed personnel about the large group and shots fired — arrived in the area. (*Id.* ¶¶ 6-10; *see also* Docket No. 171 ("Mindrutiu Supp. Decl."), Ex. P). Soon after their arrival, Officer Espinal observed a man, Marquis Rochester, looking back toward the police and "fidgeting with his waistband." (*Id.* ¶¶ 12, 17). Upon hearing a metal object hit the ground and seeing a firearm on the ground next to Rochester, Officer Espinal arrested him. (*Id.* ¶¶ 15-17). At the same time, Sergeant Gillis observed a group of men approaching and walking in the same direction as Rochester on St. Raymonds Avenue. (*Id.* ¶ 18). The group was about fifteen feet away from the spot where Rochester had been arrested. (*Id.*). After calling for backup, Sergeant Gillis and Officer Espinal discovered a second firearm by a tree further east on the

2

south side St. Raymonds Avenue.  (*Id.* ¶¶ 21-22, 24).  Officer Espinal concluded that both guns had been fired shortly before they were recovered because they were still warm when the officers found them.  (*Id.* ¶ 25).

Plaintiffs were arrested near where the firearms were recovered for criminal possession of a weapon and unlawful assembly.  (*Id.* ¶ 44-45).  The police arrested five other men as well.  (*Id.* ¶ 46).  The District Attorney's Office initially deferred prosecution of Plaintiffs "for further investigation," and eventually declined to prosecute any of them.  (*Id.* ¶ 51).

## THE SUMMARY JUDGMENT MOTION

The Court begins with Defendants' summary judgment motion.  Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*,

373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## A. Plaintiffs' False Arrest Claims

Applying those standards here, Defendants' motion to dismiss Plaintiffs' primary claim, for false arrest, must be denied. To establish a claim of false arrest under Title 42, United States Code, Section 1983 or New York law, a plaintiff must demonstrate that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (brackets in original). Significantly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause to arrest

exists if the arresting officers have actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A court should consider the "totality of the circumstances" in evaluating whether "the facts available to the officer at the time of arrest" meet that bar. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).

Here, Defendants argue that probable cause existed to arrest Plaintiffs for two offenses under New York law: unlawful assembly and criminal possession of a weapon in the second degree.  (Docket No. 159 ("Defs.' Mem.") 6).  A person is guilty of the former "when he assembles with four or more other persons for the purpose of engaging or preparing to engage with them in tumultuous and violent conduct likely to cause public alarm, or when, being present at an assembly which either has or develops such purpose, he remains there with intent to advance that purpose."  N.Y. Penal Law § 240.10.  Conviction requires "an incitement which is both directed towards and likely to produce imminent violent and tumultuous conduct."  *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006); *see also Shapiro v. City of N.Y.*, No. 94-CV-8135 (JFK), 1999 WL 64290, at *3 (S.D.N.Y. Feb. 8, 1999) ("[Section] 240.10 . . . requires that before an individual may be charged with unlawful assembly, his actions must constitute an incitement which is both directed towards and likely to produce imminent violent and tumultuous conduct.").  Notably, "presence as part of a group in which some members may be threatening violence and tumult would not suffice to establish a violation of Penal Law § 240.10, absent evidence which supports an inference that the accused specifically shared the intent to further that purpose."  *In re Christopher M.*, 912 N.Y.S.2d 391, 394 (Fam. Ct. 2010), *aff'd*, 943 N.Y.S.2d 171 (App. Div. 2d Dep't 2012).

A person is guilty of criminal possession of a weapon in the second degree "when (1) with intent to use the same unlawfully against another, such person: (a) possesses a machine-gun; or (b) possesses a loaded firearm; or (c) possesses a disguised gun." N.Y. Penal Law § 265.03. "[P]ossession . . . is complete once [an individual] has dominion and control of a weapon." *People v. Carpenter*, 30 N.Y.S.3d 299, 303 (App. Div. 2d Dep't 2016) (brackets in original). Additionally, New York law makes it unlawful to aid and abet another in committing a crime. A person is criminally liable as an accomplice "when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. An accomplice must have a shared intent, or "community of purpose" with the principal. *Carpenter*, 30 N.Y.S.3d at 301. In addition, "the accomplice must have intentionally aided the principal in bringing forth a result." *Id.* Thus, "accomplice liability requires, at a minimum, awareness of the proscribed conduct and some overt act in furtherance of such." *Id.*

In the present case, the Court cannot say as a matter of law that Defendants had probable cause to arrest Plaintiffs for either offense because, among other things, there are material disputes with respect to where each Plaintiff was when the police arrived, whether each Plaintiff was part of a larger "group," and whether each Plaintiff was close enough to one of the recovered firearms to have exercised dominion and control over it. For example, Simon claims that before his arrest he walked past the group of people, and eventually "everybody was behind [him]" and he was not walking alongside the group. (Docket No. 162 ("Mindrutiu Decl."), Ex. J, at 82-83). Similarly, Creer testified that even though the whole area was cluttered with people, "[t]here was nobody on the side of [him] period" and he "was by [him]self." (Mindrutiu Decl., Ex. I, at 63, 65). Even Phinizy, whose account of the events is closest to Defendants' own, noted that after

parking his car "[he] went into the crowd," but that it was only "a matter of a second" before the police had their "guns out" and were shouting "Get on the floor, everybody."  (Mindrutiu Decl., Ex. H, at 109-110).  From that account, a jury could infer that Phinizy was across the street parking when the police actually arrived, undermining Defendants' claim that he was a part of the group in the moments leading up to his arrest.  And while the events were captured by video surveillance, the video is, at best, inconclusive.  (*See* Mindrutiu Decl., Ex. G).  It shows Rochester's arrest and a number of people, including perhaps some Plaintiffs, being seized by police officers.  (*Id.* at 21:28:35-21:29:30).  But it does not clearly depict a group walking towards St. Raymonds Avenue when Defendants arrived, let alone make clear that each of the four Plaintiffs was part of any such group.  (Docket No. 168 ("Pls.' Opp'n"), Ex. 1 ¶ 28).

Even if there were no disputes about each Plaintiff's location, Defendants' motion would still fall short.  First, with respect to the crime of unlawful assembly, it is far from clear what basis Defendants had to believe that each Plaintiff "specifically shared the intent to further [the group's violent] purpose."  *In re Christopher M*., 912 N.Y.S.2d at 394.  In fact, Defendants do not contend that the arresting officers had any individualized knowledge of each Plaintiff's actions except insofar as they were all observed in the same general vicinity as the two firearms.  Without evidence specifically tying each Plaintiff to the earlier gunshots or the violent activities of the group, however, the Court cannot conclude as a matter of law that Defendants had a reasonable basis to believe that each Plaintiff "shared a community of purpose with others to engage in imminent tumultuous and violent conduct," as required by New York's unlawful assembly statute.  *In re Christopher M*., 943 N.Y.S.2d at 172; *see Maryland v. Pringle,* 540 U.S. 366, 371 (2003) ("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that belief of guilt must be particularized with respect to the person to be

7

searched or seized." (citations omitted)); *Dinler v. City of N.Y.*, No. 04-CV-7921 (RJS) (JCF), 2012 WL 4513352, at *3 (S.D.N.Y. Sept. 30, 2012) ("[P]robable cause must be particular to the individual being arrested.").

Similarly, a reasonable jury could find that Defendants lacked probable cause to believe that each Plaintiff was "acting in concert to possess the firearms," (Defs.' Mem. 8), as there is little or no evidence that any Plaintiff shared an intent or "community of purpose" with those that actually possessed the weapons, let alone that each Plaintiff committed an "overt act" in furtherance of the gun possession. *Carpenter*, 30 N.Y.S.3d at 301; *see also, e.g.*, *Mitchell v. City of N.Y.*, 841 F.3d 72, 78-79 (2d Cir. 2016) (finding no basis for a mass arrest when there was no individualized probable cause to arrest appellants for trespass); *Dinler*, 2012 WL 4513352, at *3 ("[M]ere proximity to illegal conduct does not establish probable cause with respect to an individual."). Accordingly, drawing all inferences in favor of Plaintiffs, the Court cannot find as a matter of law that Defendants had probable cause to arrest Plaintiffs for unlawful assembly or criminal possession of a weapon in the second degree.

In arguing otherwise, Defendants seem to rely on a notion of "group probable cause," which would permit a law enforcement officer to arrest multiple people where it reasonably appears that they are a part of a larger group, some of whose members are engaging in unlawful conduct. *See Dinler,* 2012 WL 4513352, at *4 (coining the phrase "group probable cause"). The Second Circuit, however, rejected a comparable argument in *Jones v. Parmley*. *See* 465 F.3d at 59-60. In that case, officers arrested a subset of a group of protestors and alleged that they had violated a traffic obstruction law by stepping into a nearby interstate to distribute literature about their cause before rejoining the larger group of protesters. *See id.* at 52-53. Although the Second Circuit assumed *arguendo* that some of the arrested protestors had indeed violated the state

statute, it found the police officers' conduct to be unreasonable because, at the time of the

arrests, none of the officers could identify the specific protestors responsible for the violations.

*See id.* at 59-60.  As the Court reasoned, "[w]ithout the ability to identify those individuals who

had entered the . . . roadway, defendants cannot rely on [the state statute prohibiting obstruction

of traffic] to justify their actions."  *Id.* at 60.  That is, even though some arrestees may indeed

have violated the law, the court found that the "indiscriminate" arrests of the protesters were

"without probable cause."  *Id.*  So too here, Defendants have not put forth evidence

demonstrating as a matter of law that they had sufficiently individualized knowledge of each

Plaintiff's conduct to justify the arrests.

In the alternative, Defendants argue that they are entitled to summary judgment on

Plaintiffs' false arrest claims on the ground that they are protected by qualified immunity.

(Defs.' Mem. 9-12).  An officer is entitled to qualified immunity if "arguable probable cause"

existed — that is, if "a reasonable police officer in the same circumstances and possessing the

same knowledge as the officer in question could have reasonably believed that probable cause

existed in the light of well-established law."  *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir.

2001).  More specifically, the doctrine of qualified immunity provides a complete defense where

"either (a) it was objectively reasonable for the officer to believe that probable cause existed, or

(b) officers of reasonable competence could disagree on whether the probable cause test was

met."  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  But "[w]here, as here,

there are facts in dispute that are material to a determination of reasonableness, summary

judgment on qualified immunity grounds is not appropriate."  *McKelvie v. Cooper*, 190 F.3d 58,

63 (2d Cir. 1999); *see also, e.g.*, *Weyant*, 101 F.3d at 858 (holding that the issue of qualified

immunity could not be resolved as a matter of law because the officers' version of events was

"sharply disputed"); *Bradley v. Jusino*, 374 F. App'x 144, 146-47 (2d Cir. 2010) (holding that summary judgment on a false arrest claim was not appropriate where facts are disputed and the plaintiff's version of facts does not support a finding of probable cause or arguable probable cause); *Rogers v. City of Amsterdam*, 303 F.3d 155, 160 (2d Cir. 2002) (reversing a district court's grant of qualified immunity on a false arrest claim where "[t]he information available to [the officer] indicated that [the plaintiff] was nothing more than an interested bystander," even though the officer arguably had probable cause to arrest others).[3]

## B.  Plaintiffs' Other Claims

For the foregoing reasons, Plaintiffs' core claim — for false arrest — survives Defendants' motion for summary judgment.  By contrast, Defendants are entitled to summary judgment on Plaintiffs' other claims, for failure to intervene and violations of Plaintiffs' rights under the First, Fourth, Sixth, and Fourteenth Amendments.[4]  First, Plaintiffs' failure-to-intervene claims fail because they allege that all Defendants were direct participants in the alleged wrongful acts.  *See, e.g.*, *Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) ("Where the officer is a direct participant in

---

[3]     Defendants argue that Plaintiffs' false arrest claims against Lieutenant Scheublin should be dismissed for lack of personal involvement.  (Defs.' Reply Mem. 10).  There is evidence, however, that Lieutenant Scheublin was personally and directly involved in the decision to arrest and charge Plaintiffs.  (*See* Mindrutiu Decl., Ex. B, at 20-21 ("Collectively [Sergeant Gillis, Officer Espinal, and Lieutenant Scheublin] made th[e] decision [to take the Plaintiffs to the precinct and charge them with crimes.]")).  Accordingly, the argument is without merit.  *Cf., e.g.*, *Nunez v. City of N.Y.*, No. 14-CV-4182 (RJS), 2016 WL 1322448, at *6 (S.D.N.Y. Mar. 31, 2016) (finding a lack of personal involvement for a defendant where the plaintiffs "fail[ed] to plead any facts suggesting that she was personally involved in the decision to arrest Plaintiff or to detain him pre-arraignment"); *Humbach v. Canon*, No. 13-CV-2512 (NSR), 2014 WL 6057703, at *4 (S.D.N.Y. Nov. 12, 2014) (same).

[4]     In addition, Plaintiffs explicitly abandon their municipal liability claims against the City. (Pls.' Opp'n 11).

the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable."). Second, Plaintiffs' First Amendment claims fail because they proffer no evidence suggesting that any Defendant's actions "were motivated or substantially caused" by their exercise of their First Amendment rights.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  Third, although Plaintiffs allege a violation of their Fourth Amendment rights separate and apart from their claims for false arrest, they present no facts in support of those claims; thus, they are dismissed both for lack of evidence and as duplicative of their false arrest claims.[5]  Similarly, Plaintiffs' Fourteenth Amendment procedural due process claims are subject to dismissal because they are duplicative of their false arrest claims.  *See, e.g.*, *Hickey v. City of N.Y.*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *19 (S.D.N.Y. Nov. 29, 2004) (dismissing the plaintiffs' procedural due process claims as duplicative of their claims for false arrest).  And finally, although Plaintiffs allege violations of their Sixth Amendment rights in their complaint, they have no plausible claims given that they were not prosecuted.  (Second Am. Compl. ¶¶ 30, 36).  *See, e.g.*, *Brewer v. Williams*, 430 U.S. 387, 398-99 (1977) (holding that the Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated against him whether by

---

[5]      Plaintiff Francois also alleges in the Second Amended Complaint that Officer Espinal "repeatedly stopped [him] . . . and unlawfully detained, questioned and searched him."  (Docket No. 155 ("Second Am. Compl.") ¶ 31).  But he alleges no other facts about these stops and no evidence concerning these stops appears to be in the record.  To the extent that the conclusory allegation can nonetheless be construed as an independent Fourth Amendment claim, it fails as a matter of law, as a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, Francois waives any such Fourth Amendment claim because he fails to respond to Defendants' arguments for summary judgment on the matter.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

way of formal charge, preliminary hearing, indictment, information, or arraignment") (internal quotation marks omitted).

## THE MOTION TO PRECLUDE

Next, Defendants move to preclude Francois from calling Dr. Robert Lloyd Goldstein as an expert witness on the ground that he disclosed Dr. Goldstein in an untimely manner.  (Defs.' Mem. 17-21).  Under Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure, a party must disclose the identity of any expert witness "at the times and in the sequence that the court orders."  A party who fails to comply with that requirement may not call the witness at trial unless the failure "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  When determining whether to preclude evidence under those Rules, a court must consider four factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

As a threshold matter, there is no question that Francois's disclosure was untimely.  At the initial pretrial conference held on July 27, 2015, the parties indicated that they did not intend to rely on experts during the course of the litigation.  (Docket No. 79).  Consistent with its standard practice, the Court struck from its model Case Management Plan and Scheduling Order the paragraph providing for expert discovery and advised the parties that if they came to believe expert discovery was appropriate they had to file a letter motion to that effect prior to the close of discovery.  (*See id.*).  Francois did not file such a letter motion.  Instead, only one day before the close of discovery, he disclosed to Defendants an expert report in which Dr. Goldstein opined that Francois suffered from post-traumatic stress disorder as a result of his arrest and would

require treatment and medication. (Def. Mem. 19-20). Making matters worse, that disclosure came after Plaintiffs' counsel's repeated representations to the Court and Defendants that Plaintiffs had not sought medical treatment and were not claiming injuries as a result of their arrests.

Nor can the Court find that Francois's failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The first factor the Court must consider — the party's explanation for the failure to comply with the disclosure requirement — cuts heavily against Francois, as he does not even attempt to proffer a legitimate explanation for his eleventh hour disclosure of Dr. Goldstein's report. Further highlighting Francois's lack of diligence, the discovery deadline was extended three separate times, and the Court even conducted a discovery conference on January 28, 2016. (Docket Nos. 89, 100, 120). Yet, at no point during this prolonged discovery period did Plaintiffs' counsel indicate any intention to conduct expert discovery. Accordingly, the first factor swings heavily in favor of excluding Dr. Goldstein's testimony.

The second factor — the importance of the testimony at issue — also cuts in favor of Defendants. Notably, Francois makes no argument regarding the importance of Dr. Goldstein's testimony; instead, he merely recites the substance of the expert's testimony. (Pls.' Opp'n 11-13). Such a failure is "by itself . . . sufficient to find that this factor weighs against" Francois. *Lebada v. N.Y. City Dep't of Educ.*, No. 14-CV-758 (LAK) (GWG), 2016 WL 626059, at *6 (S.D.N.Y. Feb. 8, 2016). Moreover, even if the Court were to assume that Dr. Goldstein's testimony was critical to Francois's case, that would not excuse his late disclosure. Generally, "the greater the importance of a witness, the more prejudice is suffered by the defendants by not having had the opportunity to depose that witness, seek documents from him or her, or question other witnesses about the witnesses' activities or knowledge." *Id*. Additionally, the mere fact

that "the evidence may be important is not sufficient to avoid preclusion where no explanation has been given for the delay." *Id.* at 7.  Indeed, to hold otherwise "would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial — an extreme version of the 'sandbagging' that Rule 26 attempts to avoid." *Agence France Presse v. Morel*, 293 F.R.D. 682, 687 (S.D.N.Y. 2013).

The last two factors — the prejudice suffered by the opposing party and the possibility of a continuance — also weigh in favor of preclusion.  Francois's last-minute introduction of an expert is plainly prejudicial to Defendants as the testimony supports a new set of damages relating to Francois' psychological condition on the eve of the close of discovery.  Given the timing of Francois's disclosure, Defendants did not have an opportunity to depose Dr. Goldstein or to offer a rebuttal expert.  And a continuance is not appropriate at this late date.  The arrests that gave rise to this litigation occurred more than two and one half years ago, the case has been pending for over two years, the parties were already granted three extensions of the discovery deadline, and discovery has been closed for more than ten months at this point.  All of those facts counsel against the granting of a potentially lengthy continuance.  *See Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 266 (S.D.N.Y. 2016).

In sum, although preclusion is a harsh sanction, *see, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006), and a court "must consider less drastic responses" before ordering preclusion, *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988), the Court concludes that Francois should not permitted to call Dr. Goldstein as an expert witness in this case.  Accordingly, Defendants' motion to preclude Dr. Goldstein is granted.[6]

---

[6]      Dr. Goldstein's testimony is subject to exclusion for an additional reason.  Local Civil Rule 83.10, which applies to this case, required Francois to serve medical releases on the City if he was claiming any physical or mental injuries beyond "garden variety" injuries.  The Rule

## THE SANCTIONS MOTION

Finally, Defendants move for sanctions against Simon based on his failure to preserve video footage that he had recorded with his cellphone on the night of the arrests.  (Defs.' Mem. 22-24).  As Defendants do not contend that Simon acted with intent to deprive them of the video footage, their motion is governed by Rule 37(e)(1), which provides, that the Court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1) (as amended December 1, 2015).[7]

Applying that Rule here, Defendants' motion fails because they do not show that they suffered any prejudice as a result of the lost footage.  Defendants assert that the lost video "was the best evidence of the presence and location of [Rochester's] gun, as well as critical events that led to plaintiffs' arrest."  (Defs.' Mem. 22).  But that assertion is pure speculation; Defendants do not actually know what (if anything) was filmed by Simon, let alone whether it would have

---

provides that failure to serve such releases "will constitute a waiver of plaintiff's claims for compensation for that physical or mental injury."  Francois did not serve any medical releases on the City in this case, so he may not now seek damages for the alleged mental injuries described in Dr. Goldstein's report.  *See, e.g.*, *Salazar v. City of N.Y.*, No. 15-CV-1989 (KBF), Docket No. 58 (S.D.N.Y. Mar. 18, 2016) (order precluding the plaintiff from asserting damages based on medical treatment that she may have received because she had failed to file any medical releases pursuant to Local Civil Rule 83.10).  In light of that, Dr. Goldstein's testimony is irrelevant.  *See* Fed. R. Evid. 401-402.

[7]     In his order transmitting the proposed amendment of Rule 37(e) to Congress, Chief Justice John G. Roberts stated that "the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."  *CAT3, LLC v. Black Lineage, Inc*., 164 F. Supp. 3d 488, 495-96 (S.D.N.Y. 2016) (quoting 2015 U.S. Order 0017).  Chief Justice Roberts's order is consistent with Title 28, United States Code, Section 2074(a), which permits the Supreme Court to apply new rules to pending proceedings, "except . . . to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies."  28 U.S.C. § 2074(a).  The Court finds that application of the new Rule 37(e) here would neither be infeasible nor work injustice and thus applies it to Defendants' motion.

been helpful to their case.  Even assuming *arguendo* that the video did capture the location of Rochester's gun, it would be largely irrelevant to the question of whether Defendants had probable cause to arrest Plaintiffs.  That gun was indisputably in the possession of Rochester when the police arrested him.  (Defs.' SOF ¶¶ 16-17).  And Defendants make no serious allegation that any Plaintiff ever had control of Rochester's weapon, as required by New York's possession of a weapon law, or that any Plaintiff aided Rochester in possessing the weapon, as required under the accessorial liability statute.  Having failed to demonstrate any prejudice from the lost video, Defendants are not entitled to sanctions under Rule 37(e).  *See, e.g.*, *Mazzei v. Money Store*, No. 15-CV-2054, 2016 WL 3902256, at *2 (2d Cir. July 15, 2016) (summary order) (finding no prejudice when "[a]ny additional evidence from the [electronic database at issue] would not have made any difference in this trial"); *Best Payphones, Inc. v. City of N.Y.*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396, at *6 (E.D.N.Y. Feb. 26, 2016) ("The Court finds that Defendants have not shown prejudice from the loss of any emails that may have existed between Plaintiff and potential buyers; therefore, no sanctions may be awarded under Rule 37(e).").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part, and all of Plaintiffs' claims other than their false arrest claims are dismissed.  Additionally, Defendants' motion to exclude Francois's expert is GRANTED and their motion for sanctions against Simon is DENIED.

Per the Case Management Plan and Scheduling Order (Docket No. 79), **within thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Rule

26(a)(3) of the Federal Rules of Civil Procedure.  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Rule 51(a)(2)(A) of the Federal Rules of Civil Procedure.  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.

Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

Finally, if the parties are interested in a settlement conference before the assigned Magistrate Judge, they shall so advise the Court by joint letter as soon as possible.

The Clerk of Court is directed to terminate Docket No. 158.


SO ORDERED.

Dated: January 5, 2017
       New York, New York

JESSE M. FURMAN
United States District Judge